**UNITED STATES of America,**
**Appellee,**

v.

**Jean E. MORISSETT; Delano Thomas;**
**James Angelo Williams, Defendants–**
**Appellants.**

**Docket Nos. 01–1337, 01–1511, 01–1529.**

United States Court of Appeals,
Second Circuit.

Oct. 22, 2002.

**336**

Gail Jacobs, Great Neck, N.Y. (Attorney
for Morissett); Clover Barrett, Brooklyn,
N.Y. (Attorney for Thomas); Julie Ann
Clark, Brooklyn, N.Y. (Attorney for
Williams), for Appellants.

Wayne L. Baker, Assistant United
States Attorney (Cecil C. Scott, Assistant
United States Attorney, of counsel; Alan
Vinegrad, United States Attorney, Eastern
District of New York, of counsel), Brook-
lyn, NY, for Appellee.

Present RALPH K. WINTER,
JOSEPH M. McLAUGHLIN and JOSÉ
A. CABRANES, Circuit Judges.

### SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS
HEREBY ORDERED, ADJUDGED,
AND DECREED** that the judgments of
the District Court be and hereby are **AF-
FIRMED.**

The three defendants-appellants ("de-
fendants"), Jean E. Morissett ("Moris-
sett"), Delano Thomas ("Thomas"), and
James Angelo Williams ("Williams") ap-
peal from judgments of the District Court
for the Eastern District of New York, filed
October 11, 2001, following a jury trial,
convicting defendants of charges arising
from their involvement in an airport cargo
theft. All three were convicted of theft of
interstate or foreign shipments by a carri-
er in violation of 18 U.S.C. § 659. In
addition, Morissett was convicted of con-
spiracy to engage in the theft in violation
of 18 U.S.C. § 371, and Williams was con-
victed of witness tampering in violation of
18 U.S.C. § 1512(b)(1), and of obstructing
the due administration of justice by creat-
ing a false alibi in violation of 18 U.S.C.
§ 1503(a). The three defendants were
sentenced principally to thirty (30) months'
imprisonment, which they are currently
serving, three years of supervised release,
and restitution of $20,529.33. This timely
appeal followed.

Morissett claims on appeal that the gov-
ernment deprived him of due process by
introducing evidence of his participation in
an uncharged armed robbery without pro-
viding notice pursuant to Fed. R. of Evid.
404(b); he also claims that his trial coun-
sel's failure to object to admission of this
evidence constituted ineffective assistance.
Thomas argues that the evidence was in-
sufficient to support his theft conviction,
that the District Court erred by allowing a
witness to identify him in court, and that
his sentence should not have been en-
hanced for obstruction of justice based on
his testimony at trial. Williams claims
that the District Court erred when it de-
nied his motion pursuant to Fed. R. of
Crim. Proc. 29(b) to set aside his witness
tampering conviction.

■ *Morissett's Claims.* District courts
enjoy broad discretion in admitting prior
act evidence under Fed. R. of Evid. 404(b).
When no objection to such evidence was
raised below, the District Court's decision
to admit the evidence is reviewed under
the plain error standard set forth in Fed-
eral Rule of Criminal Procedure 52(b).
*See Jones v. United States,* 527 U.S. 373,
119 S.Ct. 2090, 144 L.Ed.2d 370 (1999).
We find no error, much less plain error.

We have held that a District Court's
decision to admit such evidence will be
reversed only for a clear abuse of discre-
tion. *United States v. White,* 240 F.3d

127, 138 (2d Cir.2001); *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir.1996). For a finding of clear abuse of discretion, the Court of Appeals must be "persuaded that the trial judge ruled in an arbitrary and irrational fashion." *United States v. Bok*, 156 F.3d 157, 165 (2d Cir.1998) (quoting *Pipola*, 83 F.3d at 566). Even if the Court finds an abuse of discretion by the District Court, a new trial will not be ordered if "the appellate court can conclude with fair assurance that the improperly admitted evidence did not substantially influence the jury." *Hynes v. Coughlin*, 79 F.3d 285, 291 (2d Cir.1996) (citations omitted).

The prosecutor in the instant case told the jury in his summation that the evidence had only been offered to show the subjective beliefs of Vernard Dunkley ("Dunkley") regarding veiled threats from Morissett during the investigation of the Panasonic cargo heist, which had caused Dunkley to lie, and not to prove Morissett's participation in the robbery. No clarifying jury instruction was requested and, none, in the circumstances presented, was required. *United States v. Miller*, 895 F.2d 1431, 1439 (D.C.Cir.1990) (holding trial court is not required to *sua sponte* issue an unrequested jury instruction limiting the use of testimony regarding a defendant's prior bad acts).

Morissett objects to the lack of notice regarding Dunkley's testimony regarding the armed robbery, which he argues, prevented counsel from making a timely objection to the evidence. However, Morissett's counsel objected to the evidence regarding the telephone call between Morissett and Dunkley, which Dunkley perceived as a veiled threat, withdrew that objection, and then did not raise any other objections to the armed robbery testimony which immediately followed. Morissett's counsel wound up eliciting more information regarding the armed robbery on cross-examination while trying to undermine Dunkley's credibility, including testimony that the true reason Dunkley suspected Morissett's involvement in the armed robbery was because Dunkley had told Morissett that Dunkley was storing more than $10,000 in cash drug proceeds in his house—a statement that arguably implicated Morissett even as trial counsel unsuccessfully tried to undermine Dunkley's credibility. Additionally, the questioning showed a deliberate, reasonable strategic choice by Morissett's counsel to impeach Dunkley.

■ The evidence regarding Morissett's involvement in the airport cargo theft was extensive and corroborated by numerous witnesses, including FBI agents, and was sufficient to support his conviction, without reference to the armed robbery. *Dunnigan v. Keane*, 137 F.3d 117, 127 (2d Cir. 1998); *United States v. Bautista*, 252 F.3d 141, 147 (2d Cir.2001). The armed robbery evidence was properly admitted and the lack of notice, in our view, did not affect the outcome.

Pursuant to *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for Morissett to prevail on a claim of ineffective assistance of counsel, defendant must show that trial counsel: (1) made errors; and (2) that these errors were "so serious as to deprive the defendant of a fair trial." *Id.* at 687, 104 S.Ct. 2052. Morissett fails to overcome the strong presumption of competence in counsel's favor. *See United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir.1990). Under the first prong of *Strickland*, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Kimmelman v. Morrison*, 477 U.S. 365,

381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Kieser v. New York*, 56 F.3d 16, 18 (2d Cir.1995). Defendant must also establish that no reasonable probability exists that, absent counsel's unprofessional errors, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 695–96, 104 S.Ct. 2052.

■ Morissett's ineffective assistance of counsel claim is without merit. His trial counsel's performance was not deficient and his failure to object was part of a reasonable defense strategy which used the information regarding the robbery to launch an attack on Dunkley's credibility. Moreover, even if Morissett's counsel had preserved the objection he had withdrawn,· the District Court could have permitted the testimony regarding the armed robbery under Rule 404 because the testimony was being offered for the legitimate purpose of showing Dunkley's motive for changing his story.

*Thomas' Claims.* The standard of review for Thomas' challenge to the sufficiency of evidence is stringent. We consider the evidence in the light most favorable to the Government, *see, Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Canady*, 126 F.3d 352, 356 (2d Cir.1997), crediting every inference that the jury might have drawn in the Government's favor, *see, United States v. Moreno*, 181 F.3d 206, 211 (2d Cir. 1999). We analyze each item of evidence offered at trial "not in isolation but in conjunction," *United States v. Diaz*, 176 F.3d 52, 89 (2d Cir.1999), and resolve all credibility issues in the Government's favor, *see United States v. Morrison*, 153 F.3d 34, 52–54 (2d Cir. 1998). Moreover, it is permissible for the jury's verdict to be based "entirely [on] circumstantial evidence." *United States v. Sureff*, 15 F.3d 225, 228 (2d Cir.1994). The conviction must be affirmed so long as any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781.

■ Thomas' challenge to the sufficiency of the evidence presented at trial, which was offered to prove that he knowingly participated in the theft of the Panasonic cargo is without merit. Here, the evidence presented shows that Thomas repeatedly drove with Morissett—leading the way to the Canarsie home where the Panasonic cargo was initially unloaded, then traveling to Dunkley's aunt's house; he went to visit the clothing stall of Yassine Benchakroun ("Benchakroun") with Morissett; met with Benchakroun again in a parking lot with Morissett; was observed by an FBI agent removing Panasonic stereos from his garage with Benchakroun and Morissett; and ultimately took the $65,000 payment at the McDonald's restaurant. He also confessed his involvement in the scheme to FBI agents after receiving *Miranda* warnings, led the FBI to the Panasonic cargo stored at the Canarsie home, and told an agent that stereos were stored at his residence's garage. Dunkley testified that Thomas helped to unload the stereos into both residences. Finally, Thomas took the stand and the jury was permitted to draw negative inferences from his testimony, and to discredit his version of events and infer his guilt. *United States v. Friedman*, 998 F.2d 53, 57 (2d Cir.1993). In sum, the evidence was sufficient to support a conviction for knowing participation in the receipt and possession of goods stolen from a foreign shipment. *See* 18 U.S.C. § 659.

■ Thomas' motion to suppress his incourt identification by Benchakroun, a government witness, was properly denied because Benchakroun had adequate indepen-

dent bases for identifying Thomas. "In considering a district court's ruling on a suppression motion, this Court reviews the district court's factual findings under a 'clearly erroneous' standard, construing all of the evidence in the light most favorable to the government." *United States v. Glover*, 957 F.2d 1004, 1007 (2d Cir.1992).

The District Court determined that the pre-trial identification process used with Benchakroun was impermissibly suggestive (*i.e.*, on the eve of trial he was shown pictures of Thomas and was unable to identify him) and consequently, it ordered a so-called *Wade* hearing on the reliability of the basis for the in-court identification. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). It properly concluded that Benchakroun had an adequate independent basis for the in-court identification. *United States v. Salameh*, 152 F.3d 88, 126–27 (2d Cir.1998); *cf. United States v. Tortora*, 30 F.3d 334, 336 (2d Cir.1994) (holding that in-court identification was reliable even if five years intervened between crime and identification). The in-court identification of Thomas by Benchakroun which was permitted by the District Court was not based on a suggestive photo, as Thomas alleges on appeal, but rather on the numerous protracted encounters under emotionally charged circumstances: Benchakroun met with Thomas in close proximity at his clothing stall for approximately forty-five minutes; he stood next to Morissett's car, speaking with both Morissett and Thomas during daylight hours; he accompanied them to Thomas' home and helped to load more than one hundred stereos into Benchakroun's van; and Benchakroun handed Thomas the envelope with the purported payment of $65,000.

■ The sentence enhancement for Thomas' perjurious testimony at trial was not error. *United States v. Dunnigan*,

507 U.S. 87, 95, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) (defendant's right to testify does not include right to commit perjury). Where the defendant lies under oath, the application of a sentence enhancement is mandatory. *United States v. Shonubi*, 998 F.2d 84, 86–87 (2d Cir.1993) (reversing for failure to apply U.S.S.G. § 3C1.1 sentence enhancement because "[i]f a defendant's lies are found to be willful, an obstruction of justice enhancement must be imposed at sentencing.") Where a "defendant's testimony relates to an essential element of his offense, ... the judgment of conviction necessarily constitutes a finding that the contested testimony was false." *United States v. Bonds*, 933 F.2d 152, 155 (2d Cir.1991). Thomas testified that he opened the Canarsie home for the storage of furniture and did not participate in the unloading of the stereos. This testimony was directly contradicted by Dunkley. Thomas also stated that he did not store stereos in his residence's garage, but his own statements to the FBI and Benchakroun's testimony contradicted this, as well as FBI Agent Inneo's testimony that Thomas was in Morissett's Lexus the day Benchakroun followed the men to Thomas' home to pick up stereos. Thomas testified that he went to the McDonald's for food, but was seen by an FBI Agent receiving an envelope from Benchakroun, an envelope that Benchakroun testified was prepared by the FBI and purportedly contained $65,000. The sentence enhancement was warranted based on the contradictions in Thomas' own prior detailed confession and on the statements of other witnesses at trial.

■ *Williams' Claim.* Williams argues on appeal that his conviction for witness tampering under 18 U.S.C. § 1512(b)(1) was not warranted. The jury was asked to determine whether Williams corruptly persuaded, or tried to corruptly persuade,

Leon Taffe to give false testimony. Defendant Williams filed a Rule 29 motion to set aside the verdict, arguing that the verdict could not stand when he lacked the requisite intent to influence Taffe; he claims that he did not intend to influence the testimony of Taffe, and did not discuss calling Taffe as a witness or Taffe's potential testimony with Taffe. This argument fails, *inter alia,* because in pre-trial documents Williams listed Taffe as a witness he would call who would corroborate his false alibi. Evidence of defendant's request to alter the document is sufficient to demonstrate Williams' *mens rea* and to support his conviction on this count. *See, e.g., United States v. Jacques Dessange, Inc.,* 103 F.Supp.2d 701 (S.D.N.Y.2000) (finding § 1512(b)(3) violated where document destruction ordered); *cf. United States v. Conneaut Industries, Inc.,* 852 F.Supp. 116 (D.R.I.1994) (finding corporate defendant guilty under § 1512(b)(3) when its office manager instructed an individual to remove papers to prevent them from being produced in a soon-to-be-commenced federal proceeding). Williams violated Section 1512(b)(3) when he engaged in misleading conduct towards another person (Taffe) with the intent to hinder the communication to a Judge of the United States of information relating to the commission of a federal offense (i.e., to corroborate his false alibi), and when he planned to call Taffe as a witness at trial to corroborate his false alibi.

For the reasons set forth above, the judgments of the District Court are hereby **AFFIRMED**.